**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**AMY STORY,** *individually and on behalf of all others similarly situated, as a class*,

                              **Plaintiff,**

    vs.                                    1:18-CV-764
                                                      (MAD/DJS)

**SEFCU and DOES 1-100,**

                              **Defendants.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **CHERUNDOLO LAW FIRM, PLLC**<br>AXA Tower One, 17th Floor<br>100 Madison Street<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **J. PATRICK LANNON, ESQ.** |
| **MCCUNE WRIGHT AREVALO, LLP**<br>3281 East Guasti Road, Suite 100<br>Ontario, Canada 91761<br>Attorneys for Plaintiff | **RICHARD DALE MCCUNE, JR., ESQ.** |
| **THE KICK LAW FIRM**<br>815 Moraga Drive<br>Los Angeles, California 90049<br>Attorneys for Plaintiff | **TARAS KICK, ESQ.** |
| **KATTEN MUCHIN ROSENMAN LLP**<br>2029 Century Park East, Suite 2600<br>Los Angeles, California 90067<br>Attorneys for SEFCU | **ANDREW J. DEMKO, ESQ.**<br>**STUART M. RICHTER, ESQ.** |
| **KATTEN MUCHIN ROSENMAN LLP**<br>575 Madison Avenue<br>New York, New York 10022<br>Attorneys for SEFCU | **CRAIG CONVISSAR, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff seeks to bring a class action lawsuit alleging that SEFCU improperly charges overdraft fees to its customers even when their accounts contain enough funds to cover the transactions presented for payment. *See* Dkt. No. 1 at ¶ 3. According to Plaintiff, this practice violates SEFCU's contracts with its customers, Regulation E of the Electronic Fund Transfer Act (15 U.S.C.A. §§ 1693 *et seq.*) (hereinafter, "Regulation E"), and Section 349 of New York General Business Law, which prohibits deceptive trade practices. *Id.* at ¶¶ 3-4, 84. Defendant SEFCU has moved to dismiss the Complaint for lack of standing, and that motion is presently before the Court.

## II. BACKGROUND

**A.     Facts**

*1. Regulation E*

Regulation E, which was enacted by the Federal Reserve Board in 2010 to protect consumers from overdraft fees, requires financial institutions to obtain affirmative consent from their customers before charging overdraft fees on ATM and one-time debit card transactions. *Id.* at ¶ 21. To abide by Regulation E, the financial institution must (1) provide the customer with a copy of the overdraft policy, which includes the amount of the charge and maximum number of fees that may be charged, (2) inform the customer of the options that he or she has to avoid overdraft fees, if such options exist, and (3) obtain "opt-in consent" for the overdraft policy, separate from other consents and acknowledgments, that serves no purpose other than to opt into the overdraft program, and is not selected by a preselected checked box. *Id.* at ¶ 22; *see also* 12 C.F.R. § 1005.17. Additionally, the financial institution may not provide different terms for the

account depending on whether the customer opted in to the overdraft program. *See* Dkt. No. 1 at ¶ 22; *see also* 12 C.F.R. § 1005.17.

### 2. *SEFCU's Practice of Charging Overdraft Fees*

SEFCU is a federally chartered credit union operating 46 branches in upstate New York, and is a "financial institution" within the meaning of Regulation E. *See* Dkt. No. 1 at ¶ 6; 12 C.F.R. § 1005.2(i). Defendants Does 1-100 are agents, partners, joint ventures, subsidiaries, and/or affiliates of SEFCU, and those persons who own and/or operate SEFCU branch locations. *See* Dkt. No. 1 at ¶ 7. Like many financial institutions, SEFCU charges its customers an overdraft fee when it determines that a customer's account has been overdrawn. *Id.* at ¶ 16. In order to comply with Regulation E, SEFCU uses a form that allows customers to opt-in to the overdraft protection program (the "Opt-In Contract"). *Id.* at ¶ 24.

According to Plaintiff, SEFCU improperly uses an artificial balance to determine whether enough funds exist in an account for a transaction to clear. *Id.* at ¶ 28. The artificial balance is calculated by subtracting "anticipated future debits (debits that may or may not occur) and . . . deposit holds" from the actual amount of money in the customer's account. *Id.* As a result, the customer may be charged an overdraft fee even if the account has enough funds to cover the transaction. *Id.* at ¶¶ 28-29.

Plaintiff alleges that by calculating fees this way, SEFCU has breached its promise to its customers in the Opt-In Contract that SEFCU will only charge overdraft fees when the account does not have enough money to cover the transaction, and only for ATM and non-recurring debit transactions where the customer has opted in to the overdraft program. *Id.* at ¶ 26. The Opt-In Contract, in Plaintiff's opinion, does not explain that SEFCU will use "holds placed on pending debit card transactions to create a different artificial balance other than the money in the account"

3

in determining whether to assess a fee. *Id.* at ¶ 24. Additionally, Plaintiff alleges that SEFCU's Opt-In Contract violates Regulation E because (1) it does not accurately describe SEFCU's overdraft program, (2) it is included on SEFCU's website and has not been segregated from other disclosures and acknowledgments, (3) it fails to state the daily maximum number of fees that may be charged, or that no such limit exists, and (4) it includes a box, preselected as "yes," as the mechanism for acceptance. *Id.* at ¶ 25.

### 3. Amy Story

The Complaint alleges that Plaintiff is a customer who "entered into contracts with SEFCU wherein SEFCU contracted to charge overdraft fees only if her account did not have money to cover the transaction." *Id.* at ¶ 36. Plaintiff claims that she was injured when SEFCU charged her overdraft fees on nonrecurring debit card and ATM transactions even though her account had enough funds to cover the transactions. *Id.* at ¶ 39. The Complaint provides only one specific instance when this occurred, on January 20, 2016, when Plaintiff made a $3.66 debit purchase from an account with a balance of $88.64 but was still "assessed a wrongful overdraft fee in the amount of $25.00." *Id.* at ¶ 36. Plaintiff claims that a complete review of Plaintiff's and SEFCU's records will show additional instances such as this one. *Id.*

### 4. Materials Outside the Complaint

In considering a motion to dismiss, the court may consider documents attached as exhibits to the complaint or incorporated by reference in the complaint, documents that are integral to a plaintiff's claims, even if not explicitly incorporated, and matters of which judicial notice may be taken. *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[]." *Id.* at 275-76 (citations omitted).

"[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

In support of her Complaint, Plaintiff has attached a screenshot of a Member Application from SEFCU's website that contains information about the "SEFCU Overdraft Program." *See* Dkt. No. 1-1 at 1. Specifically, the site asks applicants, "[w]ould you like to opt in for SEFCU's overdraft program as outlined below? I also understand that I can opt out at any time by contacting SEFCU," and contains a drop-down box for the applicant's answer which, in the screenshot, is selected as "yes."[1] *Id.* It then describes the program as follows:

> **What you need to know about overdrafts and overdraft fees**
>
> An overdraft occurs when you do not have sufficient funds in your account to cover a transaction, but we pay it anyway. SEFCU is not obligated to pay these transactions that exceed the funds in your account. Transactions include: everyday debit card purchases, ATM withdrawals, and check and electronic funds transfers. Outlined below is SEFCU's overdraft program.
>
> 1. Subject to credit qualification, members can receive a low-interest personal line of credit starting at $500 that can serve as a cash reserve for your checking account to avoid overdrawing your account or provide you with emergency funds.
>
> 2. Once the balance of the line of credit is exhausted, SEFCU will attempt to transfer available funds from eligible shares within the same account number to cover the transaction. A $2.50 fee will be assessed for each transfer.
>
> 3. In the event that an overdraft is in excess of all overdraft sources outlined above, our standard $25 non-sufficient funds fee applies.

---

[1] Plaintiff alleges that this box is pre-selected "yes," in violation of Regulation E. *See* Dkt. No. 1 at ¶ 25.

> If we do not authorize and pay an overdraft, your transaction will be
> declined. To apply for this personal line of credit to ensure that
> your transactions are paid, applicants must submit a full loan
> application and meet credit qualifications.

*Id.* Additionally, in support of the Opposition to the Motion to Dismiss, Plaintiff provides the Court with (1) a letter from SEFCU dated December 21, 2016 which states "[t]his letter confirms that you have opted in to SEFCU's overdraft program," (hereinafter, the "December Letter"), (2) a copy of SEFCU's Member Benefits Guide, which has a section describing the overdraft program, and (3) a screenshot of SEFCU's Fee Schedule from SEFCU's website. *See* Dkt. Nos. 27-2, 27-4, 27-5. SEFCU has submitted a heavily redacted copy of Plaintiff's monthly account statement which shows that, on January 20, 2016, Plaintiff was assessed a $25 fee entitled "CHECK/ACH NSF FEE ACH." *See* Dkt. No. 26-3 at 3. The prior transaction on the account statement is a debit purchase at "SPH CAFE 1 ALBANY NY." *See id.*

The Court finds that Plaintiff necessarily relied on the terms and effect of these documents in drafting her Complaint. First, the Court may consider the "SEFCU Overdraft Program" screenshot, because Plaintiff attached it as an exhibit to the Complaint. *See Thomas*, 232 F. Supp. 2d at 275-76. Additionally, Plaintiff must have relied on the December Letter, the description of the overdraft program from the Member Benefits Guide, SEFCU's Fee Schedule, and her own account statement from January 2016, in drafting the Complaint. *See Chambers*, 282 F.3d at 153. Accordingly, the Court will consider these documents while assessing the Motion to Dismiss.

**B.     Procedural History**

Plaintiff initiated this action by filing a Class Action Complaint on June 28, 2018. *See* Dkt. No. 1. SEFCU moved to dismiss the Complaint on November 7, 2018 for lack of subject matter jurisdiction. *See* Dkt. No. 26 at 1. Plaintiff opposed that motion on December 3, 2018, and on December 7, 2018, SEFCU filed its reply. *See* Dkt. Nos. 27, 28.

On February 5, 2019, Plaintiff's counsel commenced a new proposed class action with different named plaintiffs, alleging many of the same claims against the same defendants. *See* Dkt. No. 1, *Christopher M. Sotir, et al. v. SEFCU*, No. 1:19-CV-00147 (N.D.N.Y. 2019). Although Plaintiff initially sought permission to file a motion to consolidate the two cases, *see* Dkt. No. 29 at 1, the parties have now requested that the Court resolve the pending Motion to Dismiss before they move to amend the pleading or consolidate the cases, *see* Dkt. No. 31 at 1; Dkt. No. 32 at 1.

After careful review, the Court finds that Plaintiff has sufficiently alleged standing. Thus, SEFCU's Motion to Dismiss is denied.

### III. DISCUSSION

**A.     Legal Standard**

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation omitted) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). "As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing. *Valley Forge Christian Coll.*, 454 U.S. at 471; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Thus, standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 Fed. Appx. 183, 188 (2d Cir. 2012).

"To demonstrate standing, a plaintiff must have 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v.*

7

*Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted). As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Genesis Healthcare*, 569 U.S. at 71 ("This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved"). In accordance with this precept, a plaintiff must establish standing for each claim and form of relief sought. *See Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).

Where standing is challenged at the pleadings stage, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)). To survive a 12(b)(1) motion to dismiss, the pleadings "must allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."

*Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011). However, the allegations "need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).

B.     Application

   *1. Claims based on the Opt-In Contract*

Plaintiff brings causes of action for breach of the Opt-In Contract and breach of the implied covenant of good faith and fair dealing based on the Opt-In Contract. *See* Dkt. No. 1 at ¶¶ 54-67. SEFCU argues that Plaintiff lacks standing to challenge the Opt-In Contract because she "never affirmatively alleges that she opted in to SEFCU's Regulation E overdraft program." *See* Dkt. No. 26-1 at 14 (citing *Boco v. Argent Mortg. Co., LLC*, No. 13-CV-1165, 2014 WL 1312101, *3 (E.D.N.Y. Mar. 31, 2014) (noting that "[g]enerally speaking, a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary")) (other citations omitted). Additionally, SEFCU claims that the December Letter, which stated that Plaintiff had opted in to the overdraft program, "was mistaken." *See* Dkt. No. 28 at 5 ("SEFCU has reviewed its records and has determined this letter was mistaken, *i.e.*, that Plaintiff in fact never executed the SEFCU [Opt-In Contract]"); *see also* Dkt. No. 26-2 at ¶ 3 (declaration of Gary Young, Chief Member Experience Officer at SEFCU, stating that SEFCU's "records indicate that Ms. Story never opted in to SEFCU's Regulation E overdraft protection for ATM withdrawals and one-time debit card transactions").

After careful review, the Court finds that the Complaint clearly alleges that "SEFCU entered into a contract with Plaintiff and its other customers specifically dictating the terms of its

optional overdraft program ('Opt-In Contract') which is attached hereto as EXHIBIT '1.'"[2]  *See* Dkt. No. 1 at ¶ 24; *see also id.* at ¶ 36 (stating the Plaintiff "entered into contracts with SEFCU wherein SEFCU contracted to charge overdraft fees only if her account did not have money to cover the transaction").  Moreover, the December Letter, which Plaintiff received from SEFCU, supports the allegation that she opted in to the overdraft program.  *See* Dkt. No. 27-2 at 2.  In fact, although SEFCU claims that its "records indicate that Ms. Story never opted in to SEFCU's Regulation E overdraft protection," *see* Dkt. No. 26-2 at ¶ 3, they have not presented the Court with such records, or anything else that would lead the Court to that conclusion.  Thus, "accept[ing] as true all material allegations of the complaint, and . . . constru[ing] the complaint in favor of the complaining party," *see Vazquez*, 145 F.3d at 81, the Court finds that Plaintiff has alleged facts that affirmatively and plausibly suggest that she was a party to the Opt-In Contract.  *See Amidax Trading Grp.*, 671 F.3d at 145.

SEFCU argues that regardless of whether Plaintiff is a party to the Opt-In Contract, she still lacks standing to sue because she never suffered an injury from Defendants' alleged Regulation E violation.  *See* Dkt. No. 26-1 at 15-16.  In support of this argument, SEFCU attaches a copy of Plaintiff's monthly statement, which shows a $25 fee charged on January 20, 2016 entitled, "CHECK/ACH NSF FEE ACH."  *See* Dkt. No. 26-3 at 3.  SEFCU argues that "[u]nder SEFCU's procedures, that means the fee was assessed for an ACH transaction that was presented for payment but was returned due to insufficient funds . . . The fee does not relate to the $3.66

---

[2] The document attached to the Complaint is a screenshot from SEFCU's website that contains information about the "SEFCU Overdraft Program."  *See* Dkt. No. 1-1 at 1.  The Court is not sure if this is actually the Opt-In Contract, or is simply an informational webpage about the program.  Nevertheless, to survive a motion to dismiss, Plaintiff needs only to adequately allege the contract's existence.  *See Baur*, 352 F.3d at 631 (holding that allegations "need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury").

debit card purchase for SPH Café reflected on the statement and Plaintiff was not charged a fee for that transaction." *See* Dkt. No. 26-1 at 15-16. Plaintiff, however, alleges that the $25 fee did, in fact, attach to that debit card purchase. *See* Dkt. No. 1 at ¶ 36.

In considering this motion, the Court is obligated to accept as true all well pleaded assertions in the Complaint. *See Lowell*, 352 F. Supp. 3d at 255. Here, SEFCU has not provided any documents to support its assertion that the $25 fee was not related to the debit transaction. However, Plaintiff has properly alleged that the fee related to the debit card purchase, which makes it an injury related to a breach of the Opt-In Contract. That injury was actual, concrete, and particularized, was traceable to Defendants' alleged practice of wrongfully charging overdraft fees, and is redressable by a favorable decision from this Court. *See Lujan*, 504 U.S. at 560-61. Accordingly, the Court finds that Plaintiff has alleged facts that affirmatively and plausibly suggest that she has standing to bring the claims based on the Opt-In Contract. *Amidax Trading Grp.*, 671 F.3d at 145.

### *2. Unjust Enrichment and Money Had and Received*

Next, Plaintiff asserts causes of action for unjust enrichment and money had and received. Under New York law, "claims for unjust enrichment and money had and received are identical." *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129 n.1 (N.D.N.Y. 2008) (citing *In re Estate of Witbeck*, 666 N.Y.S.2d 315, 317 (3d Dep't 1997)). Therefore, the Court will treat these claims as one cause of action.

According to Plaintiff, because SEFCU's customers paid the erroneous overdraft fees, "Plaintiff and the Class members have conferred a benefit on Defendant, . . . Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it was conveyed, and yet has voluntarily accepted and retained the benefit conferred." *See* Dkt. No. 1 at ¶ 71.

Thus, SEFCU "unjustly received millions of dollars in overdraft fees," and would be unjustly enriched if it is allowed to retain such funds. *Id.* at ¶¶ 69-71.

After reviewing the Complaint, the Court finds that Plaintiff has alleged an injury in fact - that she was wrongfully charged overdraft fees - to support her unjust enrichment claim. Therefore, Plaintiff has standing to bring this claim.

At the same time, relief for an unjust enrichment claim, which seeks restitution and is based upon a theory of quasi-contract, is only available in the absence of an enforceable written contract between the parties which governs the same subject matter. *See Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01-CV-4426, 2004 WL 758303, *11 (S.D.N.Y. Apr. 7, 2004) (citation omitted). Thus, Plaintiff's claim for unjust enrichment is likely precluded by the Opt-In Contract, provided that the Opt-In Contract is an enforceable agreement about the assessment of overdraft fees. Still, at this stage of the proceedings, the Court does not know for a fact whether a contract exists between Plaintiff and Defendants. Thus, the unjust enrichment claim may proceed. *See GlaxoSmithKline LLC v. Beede*, No. 1:13-CV-00001, 2014 WL 896724, *7 (N.D.N.Y. Mar. 6, 2014) (permitting both the contract claim and unjust enrichment claim to proceed where the parties "disagree[d] as to the terms and even existence of a valid contract").

### 3. Regulation E

Plaintiff argues that SEFCU did not properly abide by Regulation E's opt-in requirements before charging overdraft fees. *See* Dkt. No. 1 at ¶ 77. SEFCU responds that Plaintiff lacks standing to bring this cause of action because she never suffered harm from a Regulation E violation. *See* Dkt. No. 26-1 at 15-16 (claiming that Plaintiff has not alleged an injury resulting from a Regulation E violation because Regulation E only applies to overdraft fees assessed on an

ATM or one-time debit card transaction, and the $25.00 fee assessed against Plaintiff related to an ACH transaction, not the debit card purchase).

As discussed above, Plaintiff has alleged that the fee on her account statement relates to the debit card transaction, and SEFCU has not provided the Court with anything to suggest otherwise. Therefore, Plaintiff has properly alleged that she suffered an injury that is traceable to Defendants' alleged violation of Regulation E, and is redressable by a favorable decision from this Court. *See Lujan*, 504 U.S. at 560-61. Accordingly, Plaintiff has standing to bring the Regulation E claim.

### *4. New York General Business Law § 349*

Finally, Plaintiff alleges that Defendants' practice of charging overdraft fees even where the customer's account contained enough funds to cover the transaction was a deceptive act in violation of New York General Business Law § 349. *See* Dkt. No. 1 at ¶ 84. Because Plaintiff has alleged that she was harmed by Defendants' unlawful business practice of improperly charging overdraft fees, the Court finds that Plaintiff has standing to bring this claim.

### IV. CONCLUSION

After careful review of the Complaint, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that SEFCU's Motion to Dismiss (Dkt. No. 26-1) is **DENIED** in its entirety; and the Court further

**ORDERS** that Plaintiff's letter request to file a Motion to Consolidate this Case with *Christopher M. Sotir, et al. v. SEFCU*, No. 1:19-CV-00147 (N.D.N.Y. 2019) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 5, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge