**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMY STORY,** *individually, and on behalf of all*
*others similarly situated*; **CHRISTOPHER M. SOTIR,**
*individually, and on behalf of all others similarly*
*situated*; **JENNY LEA RANDALL***, individually, and*
*on behalf of all others similarly situated*,

                                        **Plaintiffs,**

           **vs.**                                              **1:18-CV-764**
                                                                **(MAD/DJS)**

**SEFCU,**

                                        **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**CHERUNDOLO LAW FIRM, PLLC**            **J. PATRICK LANNON, ESQ.**
AXA Tower One 15th Floor
100 Madison Street
Syracuse, New York 13202
Attorneys for Plaintiffs

**MCCUNE WRIGHT AREVALO, LLP**           **RICHARD DALE MCCUNE, JR., ESQ.**
3281 East Guasti Road
Suite 100
Ontario, Canada 91761
Attorneys for Plaintiffs

**THE KICK LAW FIRM**                    **TARAS KICK, ESQ.**
815 Moraga Drive
Los Angeles, California 90049
Attorneys for Plaintiffs

**KATTEN, MUCHIN, LAW FIRM –**           **ANDREW J. DEMKO, ESQ.**
**LOS ANGELES OFFICE**                   **STUART M. RICHTER, ESQ.**
2029 Century Park East
Suite 2600
Los Angeles, California 90067
Attorneys for Defendant

**KATTEN MUCHIN ROSENMAN –**             **CRAIG CONVISSAR, ESQ.**

1

**NY OFFICE**
575 Madison Avenue
New York, New York 10022
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 28, 2018, Plaintiff Amy Story commenced this putative class action against Defendant, alleging multiple causes of action stemming from SEFCU's policy regarding overdraft fees. *See* Dkt. No. 1. Following the Court's denial of Defendant's motion to dismiss, this action was consolidated with two other pending cases. *See* Dkt. Nos. 34, 37. On July 15, 2019, Plaintiffs Amy Story, Christopher Sotir, and Jenny Randall filed an amended complaint alleging the following causes of action: (1) breach of the opt-in contract, (2) breach of the account agreement, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment/restitution, (5) money had and received, (6) violations of the Electronic Fund Transfers Act ("Regulation E"), (7) violations of New York General Business Law Section 349 ("Section 349"), and (8) negligence. *See* Dkt. No. 38. The parties engaged in multiple mediations and ultimately reached a settlement agreement. *See* Dkt. No. 67.

On August 24, 2020, Plaintiffs filed a motion to certify the class and for preliminary approval of class action settlement. *See* Dkt. Nos. 69, 72. On November 2, 2020, the Court preliminarily approved the parties proposed settlement and directed that notice be sent to Class Members. *See* Dkt. No. 73. On February 9, 2021, the Court held a final approval hearing, during which it signaled its intent to approve the settlement and requested fees and indicated that a written decision would follow.

As set forth below, the Court hereby grants Plaintiffs' unopposed motions for final approval of class settlement, service awards, attorneys' fees and costs, and settlement claims administrator's fees and costs.

## II. BACKGROUND

**A.      Factual Allegations**

This class action seeks compensation and injunctive relief due to SEFCU's policy and practice of assessing fees on transactions when there was enough money in the checking account to pay for the transactions presented for payment. *See* Dkt. No. 41 at ¶ 3. Plaintiffs allege that assessment of such fees violated the agreement between Defendant and Plaintiffs. *See id.* Plaintiffs further allege that Defendant improperly charged its members fees on a variety of transactions when the members did not opt-in to those programs despite Defendant's promise that it would only charge members who opted-in to the protection programs. *See id.* Additionally, Plaintiffs allege that Defendant violated Section 349 by assessing fees against its members based on a misleading contract, charging fees in a manner other than that described by the contract, and imposing a financial detriment on certain members who opted-in to protection while providing no benefit to those members. *See id.* Defendant also allegedly assessed fees in instances when it had no contractual basis to assess the fee. *See id.* Plaintiffs allege that Defendant further violated Section 349 by transferring money from members' savings accounts into their checking accounts to avoid a negative balance and resulting fee, but nonetheless imposed the fee. *See id.* Finally, Plaintiffs allege that Defendant violated the terms of its contracts and various laws by imposing non-sufficient funds ("NSF") fees more than once on the same transaction. *See id.*

**B.      Settlement Negotiations**

The parties participated in three mediations in this matter.  *See* Dkt. No. 74-10 at 12.  The first two mediations took place in New York City before a private mediator on December 14, 2018 and May 9, 2019.  *See id.*  The final mediation took place before the same mediator via Zoom on May 26, 2020.[1]  *See id.*  The mediations were unsuccessful; however, after the third session, the mediator made a "mediator's proposal" which was accepted by the parties.  *See id.*

On August 24, 2020, Plaintiffs filed their unopposed motion for preliminary approval of class action settlement.  *See* Dkt. No. 69.  In their motion, Plaintiffs requested, among other things, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class.  *See* Dkt. No. 72 at ¶¶ 2, 8.  On November 2, 2020, the Court granted Plaintiffs' motion for preliminary approval.  *See* Dkt. No. 73.

## C.   CAFA Notice

On November 20, 2020, the Settlement Administrator sent notice packets to federal authorities as required by the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1715(d); Dkt. No. 74-8 at ¶¶ 2-4.  The 90-day CAFA notice period concluded on February 18, 2021.

## D.   Summary of the Settlement Terms

### 1. The Settlement Fund

The settlement establishes a gross settlement fund of $5,850,000 of cash to be distributed as described by the Settlement Agreement.   *See* Dkt. No. 74-2 at § 1(v).  The Settlement Fund (the "Fund") covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs.  *See id.* at § 9(a).

### 2. Eligible Class Members and Releases

_____

[1] The final mediation took place remotely in due to the COVID-19 pandemic.  *See* Dkt. No. 74-10 at 12.

4

Class Members who are entitled to receive payments from the Fund include the following classes:

> "Multiple NSF Fees on a Single Item Class" [defined as] those members of Defendant who, from July 23, 2016 through March 31, 2020, were assessed more than one NSF fee on a single payment transaction.
>
> "No Benefit Opt-In Class" [defined as] those members of Defendant who from February 5, 2016, through December 28, 2018, paid an overdraft fee on a non-recurring debit card transaction that was not refunded.
>
> "Sufficient Funds Class" [defined as] those members of Defendant who paid a Sufficient Funds Overdraft Charge that was not refunded.
>
> "Sweep From Savings to Checking Account Class" [defined as] any member of Defendant charged a Sweep From Savings to Checking Account Overdraft Fee.

Dkt. No. 74-2 at §§ 1(o)-(y).  All class members who do not timely opt out of the settlement will release Defendant from all claims that arise out of and relate to the facts and claims included in the Amended Complaint.  *See id.* at § 15(a).  In addition, Plaintiffs will provide a general release, including a release of unknown claims.  *See id.*

### 3. Allocation Formula

Class Members will be paid pursuant to an allocation formula based on a percentage of the Net Settlement Fund multiplied by the total amount of overdraft or NSF fees assessed.  *See* Dkt. No. 74-2 at § 9(d)(iv).  The Settlement Claims Administrator will calculate Settlement Awards based on the class information, and will allocate such payments as follows:

> Of the $5,850,000 Settlement Fund, $3,065,000 (52.4%) is allocated to the "Sufficient Funds Class"; $1,615,000 (27.6%) is allocated to the "No Benefit Opt-In Class"; $1,000,000 (17.1%) is allocated to the "Multiple NSF Fees on a Single Item Class"; and, $170,000 (2.9%) is allocated to the "Sweep From Savings to

Checking Account Class." Based on this allocation, payments from the "Net Settlement Fund" shall be calculated as follows:

(1) Members of the "Sufficient Funds Class" shall be paid per incurred Sufficient Funds Overdraft Charge calculated as follows:

> (0.524 of the Net Settlement Fund/Total "Sufficient Funds Overdraft Charges") x Total "Sufficient Funds Overdraft Charges" paid by the member of the "Sufficient Funds Class" = Individual Payment

(2) Members of the "No Benefit Opt-In Class" shall be paid per incurred "No Benefit Opt-In Overdraft Charge" calculated as follows:

> (0.276 of the Net Settlement Fund/ "No Benefit Opt-In Overdraft Charges") x Total "No Benefit Opt-In Overdraft Charges" paid by the member of the "No Benefit Opt-In Class" = Individual Payment

(3) Members of the "Multiple NSF Fees on a Single Item Class" shall be paid per incurred "Multiple NSF Fee" calculated as follows:

> (0.171 of the Net Settlement Fund/ "Multiple NSF Fee" charges) x Total "Multiple NSF Fee" charges paid by the member of the No Benefit Opt-In Class = Individual Payment

(4) Members of the "Sweep From Savings to Checking Account Class" shall be paid per incurred "[]Sweep From Savings to Checking Account Overdraft Fee" calculated as follows:

> (0.029 of the Net Settlement Fund/ "Sweep From Savings to Checking Account Overdraft Charges") x Total "Sweep From Savings to Checking Account Overdraft Charges" charges paid by the member of the "Sweep From Savings to Checking Account Class" = Individual Payment

(5) Because certain fees of the members of the classes may overlap, to prevent Class Members from recovering more than the fees they paid, Class Members shall not be entitled to recover more for each allegedly improper fee than the actual amount charged for such fee. Thus, if a Class Member was charged $25 for an Overdraft Fee which is a "No Benefit-Opt In Overdraft Charge" and is also a "Sweep From Savings to Checking Account Overdraft Charge," then that Class Member shall only be entitled to recover at most $25

6

> for that fee.  Amounts payable to any Class Member in excess of
> the actual fees charged to that Class Member shall be allocated to
> the Sufficient Funds Class.

*Id.*  All Class Members who are current members of SEFCU at the time of distribution will be

paid by direct deposit into their accounts.  *See id.* at § 9(d)(iv)(6).  Class Members who do not

have accounts with Defendant at the time of distribution will be sent a check by the Claims

Administrator to the address where the notice was sent, or to such other address as designated by

the Class Member.  *See id.*  No portion of the Settlement Fund will revert to Defendant.  *See id.* at

§ 9(d)(v).

### 4. Attorneys' Fees and Costs

Class Counsel move for an award of attorneys' fees in the amount of $2,527,811, which

constitutes a little more than 25% of the estimated value of the settlement.[2]  *See* Dkt. No. 74-10 at

19.  Additionally, Class Counsel request reimbursement of up to $168,029.71 in out-of-pocket

expenses to be paid from the Settlement Fund.  *See id.* at 25.

### 5. Settlement Claims Administration

To facilitate the logistics of executing this settlement, the parties agreed to the

appointment of KCC LLC ("KCC") to serve as the Settlement Claims Administrator ("Claims

Administrator").  *See* Dkt. No. 74-10 at 8.  The Claims Administrator shall receive up to $80,000

in fees and costs from the Fund.  *See* Dkt. No. 74-10.

The Claims Administrator used multiple mediums to issue notices to class members.  *See*

Dkt. No. 74-8 at ¶¶ 6-18.  On November 3, 2020, the Claims Administrator received a list of

Class Members.  *See id.* at ¶ 5.  On December 2, 2020, KCC sent email notices to 14,668 Class

---

[2] The estimated value of the settlement is $9,734,857.  *See* Dkt. No. 74-10 at 19.  This
figure includes the value of the settlement fund plus the value of the changes in policy to be made
by SEFCU and uncollected overdraft fees.  *See id.* at 18; Dkt. No. 74-2 at § 1(bb).

Members with current memberships with Defendant.  *See id.* at ¶ 7.  Of the 14,668 email notices sent, 2,253 were reported as undeliverable.  *See id.*  On the same day, KCC mailed post card notices to 52,638 names and addresses on the Class List.  *See id.* at ¶ 10.  On December 9, 2020, KCC sent an additional 749 emails to Class Members using newly obtained email addresses.  *See id.* at ¶ 8.  On December 17, 2020, KCC mailed post card notices to the 1,504 Class Members who had email notices marked undeliverable.  *See id.* at ¶ 11.  After mailing the post card notices, KCC received 579 returned notices from the United States Postal Service ("USPS") with forwarding addresses.  *See id.* at ¶ 12.  KCC immediately re-mailed post card notices to the forwarding addresses supplied by the USPS.  *See id.*  KCC also received 3,803 post card notices returned as undeliverable.  *See id.* at ¶ 13.  Through credit bureaus and other public source databases, KCC was able to find updated addresses for 858 Class Members.  *See id.*  KCC promptly sent post-card notices to the newly found addresses.  *See id.*

Ultimately, the estimated direct notice reach for Class Members originally sent email notices – when combined with the post card notices sent to Class Members with unsuccessful email notices – is 99.05%.  *See id.* at ¶ 9.  The estimated direct notice reach for Class Members originally sent post card notices by USPS mail is 94.45%.  *See id.* at ¶ 14.  The estimated direct notice reach for the Class, combining both email and mail notices is 95.45%.  *See id.* at ¶ 15.

The Notice advised Class Members of their right to object or exclude themselves from the settlement and explained how to do so.  *See id.* at 15, 19.  To date, there have been no objections, and only six Class Members have opted out of the settlement.  *See* Dkt. No. 76 at 2.

### III. DISCUSSION

**A.    Class Certification**

   *1. Rule 23*

8

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding findings of predominance under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class").  "But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

On November 2, 2020, the Court preliminarily certified the settlement class.  *See* Dkt. No. 73.  Plaintiffs now request that the Court certify the following four classes for purposes of effectuating the settlement: the "Sufficient Funds Class," the "No Benefit Opt-In Class," the "Multiple NSF Fees on a Single Item Class," and the "Sweep From Savings to Checking Account Class."  *See* Dkt. No. 74-10 at 14-15.  The "Sufficient Funds Class" is defined as "those members of Defendant who paid a 'Sufficient Funds Overdraft Charge['] that was not refunded."  *See id.* at 14.  The "No Benefit Opt-In Class" is defined as "those members of Defendant who from February 5, 2016, through December 28, 2018, paid an overdraft fee on a non-recurring debit card transaction that was not refunded."  *Id.*  The "Multiple NSF Fees on a Single Item Class" is defined as "those members of Defendant who from July 23, 2016 through March 31, 2020 were assessed more than one NSF fee on a single payment transaction."  *Id.* at 15.  Finally, the "Sweep From Savings to Checking Account Class" is defined as "any member of Defendant charged a Sweep From Savings to Checking Account Overdraft Fee."  *Id.*

9

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to grant certification." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 2. Numerosity

Turning to the criteria of Rule 23, it is apparent that the proposed class satisfies the numerosity requirement.  "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  As such, numerosity here is easily satisfied because there are approximately 67,306 Class Members.

### 3. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they

must share common questions of fact or law. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). Courts construe the commonality requirement liberally. *See id.*

Here, the case involves numerous common issues. Plaintiffs and Class Members all bring identical claims, *i.e.*, that Defendant improperly charged overdraft and NSF fees in violation of the agreement between the parties. Courts have found such allegations sufficient to satisfy the commonality requirement. *See Pantelyat v. Bank of America, N.A.*, No. 16-CV-8964, 2019 WL 402854, *2 (S.D.N.Y. Jan. 31, 2019).

### 4. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative has "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." *Id.* (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Plaintiffs and the Class Members entered into the same types of account agreements and were assessed the same NSF and overdraft fees in violation of the account agreements. Additionally, the claimed injuries arise from the same course of conduct for

both the Class Members and Plaintiffs.  As such, Plaintiffs have satisfied the typicality

requirement.  *See Morris*, 859 F. Supp. 2d at 616; *Frank*, 228 F.R.D. at 182.

### 5. *Adequacy of the Named Plaintiffs and Class Counsel*

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests

are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation.'"  *Cordes & Co. Fin. Servs. v. A.G.*

*Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  "The adequacy requirement exists to ensure

that the named representatives will 'have an interest in vigorously pursuing the claims of the class,

and ... have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent.*

*Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, *7 (S.D.N.Y. Sept. 28, 2007) (quoting

*Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

In the present matter, there is no evidence that the interests of Plaintiffs and the Class

Members are at odds.  Rather, the record reflects that Plaintiffs and the Class Members have the

same incentive to maximize their compensation for past harm.

Additionally, Class Counsel in this case has established that they are qualified,

experienced, and able to conduct the litigation of this case.  Class Counsel is experienced in

handling class actions, complex litigation, and claims stemming from assessment of overdraft

fees.  As such, the Court finds that Class Counsel also meets the Rule 23(a)(4) requirements for

adequate representation.

### 6. *Certification is Proper Under Rule 23(b)(3)*

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and

"the court finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, again, Plaintiffs have satisfied the requirements of Rule 23(b)(3).  As discussed, common questions of law and fact predominate over any questions that might affect the individual Plaintiffs.  Further, a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Class Member is otherwise entitled to.  Additionally, litigating this matter as a class action will conserve judicial resources and is more efficient for the Class Members, particularly those who lack the resources to bring their claims individually.  Accordingly, the Court grants Plaintiffs' motion insofar as it seeks class certification for purposes of settlement.

**B.      Fairness of the Proposed Settlement**

### *1. Standard of Review*

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).  Federal

Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate" after considering the following:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Second Circuit also analyze proposed class-action settlements under the framework set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), in tandem with Rule 23 to determine whether a class settlement is substantively fair and warrants final approval. *See In re Namenda Direct Purchaser Antitrust Litig. ("Namenda")*, 462 F. Supp. 3d 307, 310-11 (S.D.N.Y. 2020) (citing *Grinnell*, 495 F.2d at 463). The *Grinnell* factors include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action

through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

### 2. The Settlement is Procedurally Fair

Rules 23(e)(2)(A)-(B) "constitute the procedural analysis" of the fairness inquiry. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192, 2019 WL 6889901, *6 (S.D.N.Y. Dec. 18, 2019) (citations omitted). This presumption of fairness and adequacy applies here.

Based on the submissions before the Court and as discussed at the fairness hearing, the settlement was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. Plaintiffs' counsel conducted a thorough investigation, engaged in substantial formal discovery, and participated in extensive settlement negotiations with Defendant. *See* Dkt. No. 69-6 at 10-11. Only after three separate mediations with an experienced mediator were the parties ultimately able to resolve this case through the mediator's proposal. *See id.* at 11. The final terms of the settlement were memorialized in a final settlement agreement including all terms. *See* Dkt. No. 74-2. These arm's-length negotiations raise a presumption that the settlement meets the requirements of due process. *See Pantelyat*, 2019 WL 402854, at *9. Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3. The Settlement is Substantively Fair

#### a. The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  This case, had it not settled, would have been all three.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with 67,306 Class Members and claims under federal and state law.  See Dkt. No. 41 at ¶¶ 67-118.

Additionally, settlement of this matter avoided the delay that necessarily would have followed motion practice and the time needed for the Court to act on those motions.  After all that, a lengthy and complex trial would be required, that would consume tremendous time and resources for all parties and the Court.  Therefore, the first *Grinnell* factor weighs heavily in favor of final approval.

#### b. The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ 5587, 2003 WL 21136726, *1 (S.D.N.Y. May 15, 2003).

To date, six Class Members have opted out of the settlement and there have been no objections.  *See* Dkt. No. 76 at ¶ 2.  As such, this factor favors final approval.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "'focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal.'" *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2015 WL 10847814, *7 (S.D.N.Y. Sept. 9, 2015) (quotation omitted). The parties' discovery here meets this standard. The parties exchanged thousands of pages of documentation in discovery. *See* Dkt. No. 69-6 at 10-11. Additionally, depositions of all three Plaintiffs and other non-party witnesses were taken. *See id.* at 11. Therefore, this factor favors final approval.

### d. Risk of Establishing Liability and Damages and Maintaining Class Action

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the settlement. In assessing the fourth, fifth, and sixth factors, which are often considered together, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to 'foresee with absolute certainty the outcome of the case.'" *Fleisher*, 2015 WL 10847814, at *8 (quotation omitted). "'[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id.* (quoting *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "In assessing the risks, courts recognize that 'the complexity of Plaintiff's claims ipso facto creates uncertainty.'" *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009)).

Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuing

the action through class certification, summary judgment, trial, and appeal.  A trial on the merits would involve risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to prove that they and the Class Members were charged overdraft or NSF fees and that the assessment of those fees was in violation of their account agreement.  Plaintiffs would risk a trier of fact reaching the conclusion that the language of the contracts at issue permits Defendant to assess overdraft and NSF fees in the manner that it did.

Additionally, there is risk and additional expense associated with obtaining class certification and maintaining both conditional and class certification through trial.  The Court has not certified a Rule 23 class, and such a determination would only be reached after further discovery and exhaustive briefing by the parties.  Even assuming that the Court granted certification, there is always the risk of decertification after the close of discovery.  *See Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting the defendant's motion to decertify collective action).  Risk, expense, and delay permeate such processes.  As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting final approval.

### e. Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment.  Even assuming that it could withstand a greater judgment, "this factor, standing alone, does not suggest that the settlement is unfair."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted).  Indeed, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, *8 (S.D.N.Y. May 1, 2008) (quoting *McBean v. City*

*of N.Y.*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006)).  Here, this factor is, at best, neutral, and "does not suggest that the settlement is unfair."  *D'Amato*, 236 F.3d at 86 (citations omitted).

### f. Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also strongly support approval of the settlement.  *Grinnell*, 495 F.2d at 463.  Courts typically analyze the final two *Grinnell* factors together.  *See Global Crossing*, 225 F.R.D. at 460.  In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *Grinnell*, 495 F.2d at 462.  "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'"  *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669, 2012 WL 5874655, *5 (E.D.N.Y. Nov. 20, 2012) (quoting *Frank*, 228 F.R.D. at 186).  Rather, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Visa*, 396 F.3d at 119.  Moreover, the settlement amount must be judged "'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"  *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331, 2014 WL 1224666, *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)).  The overall value of the settlement comprises monetary as well as non-monetary relief.  *See Velez v. Novartis Pharm. Corp.*, No. 04-

CV-09194, 2010 WL 4877852, *18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be considered in calculating value of a settlement).

In the present matter, the estimated value of the settlement is $9,734,857.  *See* Dkt. No. 74-10 at 28.  The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify any class, succeeded on all claims at trial, and survived an appeal with their judgment intact.

By Class Counsel's estimation, the settlement amount of $9,734,857 represents approximately 96% of Defendant's potential damages exposure of $10,142,610, assuming Plaintiffs were to prevail on all of their claims.  *See id.*  Even if the Court were to look only to the $5,850,000 of "cash" that will be made available as part of the settlement fund, this still represents approximately 57.6% of the total damages at issue.  *See id.*  The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation.

The Class Members will receive a payment based a percentage of the Net Settlement Fund multiplied by the total amount of overdraft or NSF fees assessed.  *See* Dkt. No. 74-2 at § 9(d)(iv). Class Members net settlement payment (minus attorneys' fees and costs, service awards, and claims administration fees) will depend on the class to which they belong.  *See id.*  Weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the settlement amount is reasonable.

### g. Rule 23(e)(2)(C)-(D)

Rule 23 also requires the Court to consider whether the relief provided for the class is adequate and whether the proposed settlement treats class members equitably relative to each other.  As discussed above, the record demonstrates that the settlement provides adequate relief to

the Class Members by avoiding the cost and risk of further litigation and the parties have proposed an effective method for processing and allocating Class Members' claims. The Settlement Agreement calls for automatic payments to Class Members who do not opt out of the settlement.

The Settlement Agreement's allocation plan calls for all participating Class Members to receive a pro rata share of the Fund the type and amount of fees they were assessed. *See id.* The Court finds that this allocation is reasonable and treats all Class Members in an equitable manner. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, *7 (E.D.N.Y. Oct. 23, 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel") (quotation omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund).

Finally, as will be discussed in more detail below, Plaintiffs' proposed award of attorneys' fees is reasonable and the parties filed the Settlement Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the settlement, on the docket. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

## C.   Service Awards

The three named Plaintiffs seek service awards of $15,000 each. *See* Dkt. No. 74-10 at 24. They argue that these service awards are appropriate and reasonable in light of the substantial and meaningful work that Plaintiffs have contributed. *See id.* at 24-25.

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks

incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall v. ProSource Technologies, LLC*, No. 14-CV-2502, 2016 WL 1555128, *9 (E.D.N.Y. Apr. 11, 2016) (quotation omitted).  A service award of $15,000 for each Named Plaintiff, while high, is reasonable and within the range of awards granted in this Circuit.  *See Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2010 WL 5507892, *7 (S.D.N.Y. Dec. 21, 2010) (awarding the named plaintiffs service awards of $15,000).  Therefore, the Court approves a $15,000 service award for each of the Named Plaintiffs.

**D.     Costs**

Class Counsel request reimbursement of up to $168,029.71 in out-of-pocket expenses to be paid from the Settlement Fund.  *See* Dkt. No. 74-10 at 25.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted).

Here, the Notice informed Class Members that Class Counsel would seek reimbursement for up to $175,000 of expenses and costs.  *See* Dkt. No. 74-1 at ¶ 19.  The requested amount of $168,029.71 falls below the estimate disclosed to class members.  The vast majority of the costs are attributable to expert expenses and were necessary for Plaintiffs to extract an accurate damages calculation from a complete database of customer transactions.  *See* Dkt. No. 74-3 at ¶ 25.  The Court finds these expenses reasonable and necessary.  Accordingly, the Court awards costs in the amount of $168,029.71.

**E.     Claims Administrator Fees**

Class Counsel also seek $80,000 for payment to KCC, which was selected to serve as the Settlement Claims Administrator.  *See* Dkt. No. 74-10 at 25.  Notice of this selection and payment

was provided to the Class Members and no objections were made.  *See* Dkt. No. 74-2 at 24.  The

Court finds that this expense is in line with cases of a similar nature and finds that it is reasonable.

Accordingly, the Court grants Class Counsel's request.  If, after completing administration of the

settlement, the Claims Administrator bills less than $80,000, the difference shall revert to the

Fund to be distributed pursuant to the Settlement Agreement.

**F.     Attorneys' Fees**

Class Counsel move for an award of attorneys' fees in the amount of $2,527,811, which

constitutes a little more than 25% of the estimated value of the settlement.[3]  *See* Dkt. No. 74-10 at

19.

### *1. Method of Calculating Attorneys' Fees*

"Attorneys who create a common fund from which members of a class are compensated

are entitled to 'a reasonable fee — set by the court — to be taken from the fund.'"  *In re Bristol-*

*Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (quoting *Goldberger*, 209

F.3d at 47).  Such a fee award directly depletes the amount by which the class benefits.

Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of

those with an interest in the fund who are not before the Court.  *See, e.g., Burger v. CPC Intern.,*

*Inc.*, 76 F.R.D. 183, 188 (S.D.N.Y. 1977).

The Court of Appeals has sanctioned two methods — the lodestar method and percentage

method — for calculating reasonable attorneys' fees in class actions.  *See Goldberger*, 209 F.3d at

50.  The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours

reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate."  *Id.*

---

[3] The estimated value of the settlement is $9,734,857.  *See* Dkt. No. 74-10 at 19.  This figure includes the value of the settlement fund plus the value of the changes in policy to be made by SEFCU and uncollected overdraft fees.  *See id.* at 18; Dkt. No. 74-2 at § 1(bb).

at 47 (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).  The resulting lodestar may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation.  *See id.*  The second method is the far simpler "percentage method," by which the fee award is "some percentage of the fund created for the benefit of the class."  *Savoie*, 166 F.3d at 460 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).  In determining what percentage of the fee to award, courts consider the same factors used to gauge the appropriate multiplier for the lodestar.  *See Goldberger*, 209 F.3d at 47.  The resultant percentage is lowered frequently where the common fund is large in order to avoid a perceived windfall for plaintiffs' counsel.  *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d at 233.

The Court has discretion to award fees based on either the lodestar method or the percentage method.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this.  *See Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216, 2014 WL 3778173, *9 (S.D.N.Y. July 31, 2014) (citing *McDaniel*, 595 F.3d at 417); *Wal-Mart*, 396 F.3d at 121.  When utilizing the percentage method, courts often "crosscheck" the adequacy of the resulting fee by applying the lodestar method.  *See Goldberger*, 209 F.3d at 50.  Under use of either method, the touchstone of the inquiry is whether the award is reasonable.  *See id.*  A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy.  *See id.*

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance. *See McGreevy v. Life Alert Emergency Resp., Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017). Additionally, a sliding scale approach – awarding a smaller percentage of the settlement as the amount of the settlement fund increases – is appropriate in order to avoid overcompensating the plaintiffs' counsel to the detriment of the class members they represent. *See id.* (citing *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014)) (other citation omitted).

Class Counsel contend that a fee of slightly less than one-third of the gross settlement fund is reasonable and commonly awarded in cases of this nature. *See* Dkt. No. 74-10 at 19. While this award is high, the Court finds that it is a reasonable baseline in the present matter.

### b. Counsel's Time and Labor

Class Counsel spent significant effort to achieve the settlement. During the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel engaged in discovery, including multiple depositions for which counsel was required to travel. *See* Dkt. No. 74-1 at ¶ 13. Class Counsel also conducted research and drafted Plaintiffs' opposition to Defendant's motion to dismiss. *See id.* Finally, Class Counsel took part in three separate mediations, which ultimately resulted in a favorable settlement for Plaintiffs. *See id.*

Upon completion of the formal Settlement Agreement, Plaintiffs filed their unopposed motion for preliminary approval. *See* Dkt. No. 72. In performing these and other tasks, Class Counsel contends that they have spent more than 1,325 hours of attorney, paralegal, and staff member time, which they claim represents an aggregate lodestar of approximately $913,790. *See*

Dkt. No. 74-10 at 21, 24.  Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c. Complexity of the Case

The magnitude and complexity of this case also supports the requested award.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitudes of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174 (citation omitted).  This case is no exception.  Plaintiffs' claims were based in federal and state law and involved federal banking regulations.  *See generally* Dkt. No. 41.

### d. Risk of Litigation

Class Counsel undertook some risk in accepting the case on a contingency basis.  *See McGreevy*, 258 F. Supp. 3d at 386 (citations omitted).

### e. Quality of the Representation

Class Counsel competently and efficiently represented Plaintiffs in prosecuting this action. As such, this factor supports the requested award.

### f. Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations.  *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014).  Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."  *Goldberger*, 209 F.3d at 51.  "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class."  *McGreevy*, 258 F. Supp. 3d at 387.

Here, Class Counsel obtained a favorable settlement in an efficient manner.  Additionally, as part of the settlement, SEFCU has promised to make a number of policy changes that will benefit not only the Class Members, but other SEFCU customers as well.  As such, this factor supports the requested award.

### g. Lodestar Cross-Check

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a cross-check to the fees awarded under the percentage of the fund method.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).  When the lodestar method is used as a cross-check, "the Court need not exhaustively scrutinize the hours documented by class counsel; instead, the reasonableness of the lodestar 'can be tested by the court's familiarity with the case.'" *Melito v. American Eagle Outfitters, Inc.*, No. 14-CV-2440, 2017 WL 3995619, *19 (S.D.N.Y. Sept. 11, 2017) (quoting *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548, 2012 WL 1320124, *13 (S.D.N.Y. Apr. 16, 2012)).  "'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, *26 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, *20 (S.D.N.Y. Dec. 23, 2009)).

Here, Class Counsel asserts that its combined lodestar is $913,790, resulting in a multiplier of about 2.76.  *See* Dkt. No. 74-10.  This multiplier is within the range of accepted multipliers for this Circuit.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-CV-10783, 2016 WL 3369534, *1 (S.D.N.Y. May 2, 2016) (approving a multiplier of 3.9 on a $272 million

settlement); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925, 2017 WL 3579892, *6 (S.D.N.Y. Aug. 18, 2017) (finding that a 3.14 multiplier was "within the range of reasonable … multipliers approved in this Circuit").  Accordingly, the Court finds that Class Counsel is entitled to $2,527,811 in reasonable attorneys' fees.

**G.**     *Cy Pres* **Distribution**

Pursuant to the Settlement Agreement, no money shall revert to Defendant.  *See* Dkt. No. 74-10 at 17.  Instead, the parties have agreed that upon expiration of the settlement distribution term, the residual amounts of the Settlement Fund shall be paid to one or more public interest organizations as nominated by the parties.  *See* Dkt. No. 74-10 at 17.  At the Final Approval hearing, Defendant asked that the Court to wait to approve a *cy pres* recipient until funds have been distributed to class members.  Defendant explained that after the funds have been distributed, either a second round of distributions may be made or the parties will submit nominations for a *cy pres* recipient.    Plaintiffs did not object to this proposal.  Accordingly, the Court will reserve on the issue of *cy pres* distribution.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiffs' unopposed motion for certification of the settlement class, final approval of the class action settlement, approval of service awards, and approval of attorneys' fees and costs (Dkt. No. 74) is **GRANTED**[4]; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

---

[4] As previously discussed, the Court will reserve on the issue of *cy pres* distribution.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 25, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge